NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 17 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50013 |
| Plaintiff-Appellee, | D.C. No. 2:18-cr-00121-PSG-2 |
| v. | |
| EDWARD YASUSHIRO ARAO, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted February 8, 2023
Pasadena, California

Before: SCHROEDER, TALLMAN, and IKUTA, Circuit Judges.

Defendant-Appellant Edward Arao was a Gardena Police Officer and the "responsible person" for a corporate federal firearms licensee (FFL) named "Ronin Tactical Group" (Ronin).[1] A jury twice convicted Arao of dealing firearms without

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1]    Both individuals and corporations may apply for a license to deal firearms. "[A]ny corporate applicant must provide a wealth of information about each 'responsible person,' owner, and partner of the company." *United States v. King*, 735 F.3d 1098, 1105 (9th Cir. 2013). Arao provided this information for Ronin's license, but did not have an individual federal license.

a license in violation of 18 U.S.C. § 922(a)(1)(A) and of conspiracy to do the same. Arao used Ronin's license and his status as a peace officer to buy "off-roster" handguns,[2] transferred those handguns to himself, and then resold them to third parties in what he and a co-conspirator styled as "private party transfers." Arao argues that the evidence presented at trial was insufficient to show that he "willfully" violated the law. He also argues that § 922(a)(1)(A) is unconstitutionally vague as applied to him. We disagree and affirm.

1. Arao argues that the evidence presented at trial was insufficient to support the jury's finding that he acted "willfully" as required by § 924(a)(1)(D). To prove that a defendant willfully sold firearms without a license, the government must establish beyond a reasonable doubt that the defendant "acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). The government need not prove that the defendant was aware of the specific licensing requirement that he was violating. *Id*. at 198-99. "[K]nowledge that the conduct is unlawful is all that is required." *Id*. at 196.

---

[2] California maintains a "roster" of handguns approved for sale in the state. *See* Cal. Penal Code § 32015. During the relevant period of time, gun dealers were not allowed to sell "off-roster" handguns to the public, *see id.* § 32000(a)(1), but an exception existed for police officers, who could buy them, *id.* § 32000(b)(4), and resell them in private sales, *see id.* §§ 27545, 28050(a), 32110(a); *see also* A.B. 2699, 2019-2020 Reg. Sess. (Cal. 2020) (amending the statute).

In reviewing the sufficiency of the evidence following conviction, we must construe the trial evidence in the light most favorable to the prosecution. *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc). We "may not usurp the role of the finder of fact by considering how [we] would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Id*. at 1164. In the face of conflicting evidence, we "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). After the evidence is viewed in this light, we then determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Jackson*, 443 U.S. at 319).

Arao argues that we should reverse the jury's verdict because he honestly believed that a "loophole" in state and federal law permitted his conduct. Arao points to the absence of direct evidence showing that he knew Ronin's license did not cover his private party transfers. Arao also kept transaction records as required by state and federal law, complied with California law regarding background checks and waiting periods, and conducted all of his business out in the open. But the government presented substantial circumstantial evidence of Arao's willfulness. For example, the jury heard that Arao deliberately transferred each "off-roster" firearm from Ronin to himself as an exempt police officer, and later resold those guns in private party transfers. Arao also made several false statements on ATF forms,

3

including when he asserted that he was the "actual buyer" of 41 firearms which he later resold over varying periods of time. And the government presented evidence that Arao was a police officer and, as part of the application process for Ronin's FFL, had been provided with information about federal firearms laws.

This evidence is sufficient to support the jury's verdict. A rational trier of fact could have inferred that someone with Arao's professional experience had a high degree of knowledge about firearms laws, and therefore knew Ronin's license did not cover his personal sales. *See United States v. Hernandez*, 859 F.3d 817, 822 (9th Cir. 2017) (per curiam). A rational trier of fact could also have found that Arao's efforts to structure his transactions as "private party transfers" showed that he knew Ronin's license did not cover them. *See id*. These "private party transfers" were possible only because Arao first transferred the firearms from Ronin to himself, as a private party, *see* Cal. Penal Code § 32000(b)(4), and then sold the firearms to another private party. This is because California law permits transfers of off-roster firearms only between private parties and "through" a licensed dealer that is not a party to the transaction. *See id.* §§ 27545, 28050(a), 32110(a). Thus, a reasonable jury could find that, in order to comply with California law, Arao transferred the firearms to himself and resold them, knowing he was acting as a private party and not acting on behalf of Ronin, a licensed dealer. Finally, Arao's false statements on ATF forms were further evidence of his intent to conceal his activities and violate

4

the law. *See King,* 735 F.3d at 1106. Even if Arao's belief in a legal loophole could be considered "an equally plausible innocent explanation" for his conduct, on this record a rational jury could have found that he acted willfully. *See Nevils,* 598 F.3d at 1169.

2. Arao also argues that § 922(a)(1)(A) is unconstitutionally vague as applied to him because California law allowed police officers to buy and resell off-roster firearms and because he was the "responsible person" for a corporate FFL. However, his as-applied vagueness challenge "must be examined in the light of the facts of the case at hand." *United States v. Harris,* 705 F.3d 929, 932 (9th Cir. 2013) (quoting *United States v. Mazurie,* 419 U.S. 544, 550 (1975)). Here, the jury was instructed that to convict Arao, it had to find that he acted "willfully"—that is, Arao knew he was acting unlawfully. *Bryan,* 524 U.S. at 191-92. Given that finding, we cannot conclude that the statute "failed to put [Arao] on notice that his conduct was criminal." *United States v. Kilbride,* 584 F.3d 1240, 1257 (9th Cir. 2009). Nor can California's state law, or its interplay with federal law, render the federal § 922(a)(1)(A) void for vagueness. *See United States v. Moore,* 109 F.3d 1456, 1466-67 (9th Cir. 1997).

**AFFIRMED.**